## LANGER ROOFING & SHEET METAL, INC., Petitioner,

### v.

## SECRETARY OF LABOR, U. S. DEPARTMENT OF LABOR and Occupational Safety and Health Review Commission, Respondents.

### Nos. 74–1645, 75–1203.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1975.

Decided Nov. 20, 1975.

Richard D. Finley, Milwaukee, Wis., for petitioner.

William J. Kilberg, Solicitor of Labor, Judith Burghardt, Atty., U. S. Dept. of Labor, Stephen F. Eilperin, Dept. of Justice, Washington, D. C., for respondent.

Before TONE and BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.*

---

* The Hon. Julius J. Hoffman, Senior District Judge, Northern District of Illinois, is sitting by designation.

BAUER, Circuit Judge.

This case is before the Court pursuant to Section 11(a) of the Occupational Safety and Health Act of 1970 ("OSHA") (84 Stat. 1590, 29 U.S.C. § 651 et seq.), on petitions of Langer Roofing and Sheet Metal to review orders of the Review Commission issued against it on June 11, 1974 and January 7, 1975. This Court has jurisdiction under 29 U.S.C. § 660(a), the violations found having occurred in Brookfield and Hartford, Wisconsin (the cases were consolidated for purposes of this appeal).

The question presented is whether the Review Commission properly held Langer in violation of 29 CFR 1926.500(d)(1) on undisputed evidence that its employees at two separate construction sites were working on flat roofs more than six feet above ground without a standard railing or equivalent protection against falls. The Commission so held over the strong dissent of Chairman Moran, who termed the majority's construction of 1926.500(d)(1) "preposterous."

The pertinent regulation, 29 CFR 1926.500(d)(1), a part of Subpart M, Safety and Health Regulations for construction, reads:

"(d) Guarding of open-sided floors, platforms, and runways. (1) Every open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f)(i) of this section, on all open sides, except where there is an entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a standard toe-board wherever, beneath the open sides, persons can pass, or there is moving machinery, or there is equipment with which

falling materials could create a hazard."

Subpart M of the Secretary's construction-safety regulations applies "where there is a danger of employees . . . falling through floor, roof, or wall openings" and defines "floor opening" as "an opening . . . in any floor, roof, or platform through which persons may fall." 29 CFR 1926.500(a), 1926.502(b).

The Secretary construes the word "floor," as used in 1926.500(d)(1), to encompass roofs that are used as working surfaces. In support of his interpretation, he first cites the dictionary definition of "floor," which includes "a surface . . . on which to walk, work, or travel." Webster's Third Unabridged Dictionary 873. Second, in the Secretary's view, 1926.500(a) shows that roofs are within the contemplated scope of Subpart M, and 1926.500(a)(b) shows that "floor" is used in the subpart, at least in some contexts, to include roofs. Third, the Secretary argues that his interpretation is consistent with the purpose of Subpart M (the prevention of falls), since flat roofs present a substantial danger of falls (citing National Roofing Contractors' Ass'n. v. Brennan, 495 F.2d 1294, 1302 (7th Cir. 1974) (Pell, J., dissenting), cert. denied, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801).[1] Finally, he argues that in practice there is no clear distinction between roofs and floors, because in the course of construction a surface that is temporarily the top of a building (and so a "roof") may later become a floor.

As the Secretary reminds us, we must defer to his interpretation of the Act and regulations if that interpretation is a reasonable one, even though some other interpretation would be more reasonable. Budd Co. v. OSHRC, 513

---

1. The record is insufficient to allow us to assess the extent of this risk for roofs as opposed to open-sided floors and platforms. Petitioner has argued, with some persuasiveness, that roofers are less likely to fall than the various workmen who might work on an uncompleted floor. Similarly, we find no evidence in the record to support the Secretary's

argument that the safety precautions required by 1926.451(u) are designed to deal with the hazards of rolling falls on sloped roofs, and that these precautions were not required for flat roofs because this hazard is not present, so that the allegedly greater expense of these precautions would not be justified.

F.2d 201, 204–205 (3d Cir. 1975) (per curiam); *Brennan v. Southern Contractors Service,* 492 F.2d 498, 501 (5th Cir. 1974); *Brennan v. OSHRC,* 513 F.2d 553, 554 (10th Cir. 1975); *Brennan v. OSHRC,* 501 F.2d 1196, 1199 (7th Cir. 1974). The corollary to this proposition is that a court need not defer to an interpretation it finds unreasonable, particularly when, as in this case,[2] the interpretation has not been consistently applied. Cf. *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 1754 n. 11, 40 L.Ed.2d 120 (1974).

■ The Secretary's interpretation does not accord with normal usage. Moreover, we think that 1926.451(u)(3), the only regulation expressly requiring protection for roof edges, eliminates any doubt that might exist about the scope of 1926.500(d) if the latter stood alone. The fact that 1926.451(u)(3) does not apply to flat roofs, and indeed specifically exempts even roofs having slopes of less than 4 inches in 12, indicates that perimeter protection for flat roofs was not contemplated by the writers of the regulations. When adopting 1926.451(u)(3), the Secretary indicated that roofs with lesser slopes were not covered because such slopes did not present a substantial danger of falls. 37 Fed.Reg. 233 (Dec. 2, 1972). Yet, he now argues that he adopted specific regulations dealing with sloped roofs, exempting those roofs with lesser slopes, and deliberately left coverage of flat roofs to a regulation dealing with "floors." Unlike Humpty Dumpty,[3] the Secretary may not give a word whatever meaning he chooses, and while we would defer to any reasonable interpretation on his part, we are convinced that the interpretation he advances here is unreasonable.

It may well be, as the Secretary urges, that employees working on a flat roof require perimeter protection. If this be so, the Secretary has the machinery available to amend the section in question or to promulgate an entirely new section that would lay the matter to rest. It appears to us that the time and effort—not to mention the expense—of the notice and hearing required for such regulation changes would be far less than the effort and expense of the instant case.

At any rate, the petitioner must prevail. Nowhere in the regulations cited by the Secretary do we find the authority to sanction any one for failure to provide perimeter protection on a flat roof.

The Review Commission's decisions are set aside and the citations dismissed.

Dismissed.

---

2. An interpretation contrary to that now urged by the Secretary was applied in at least two regions of the country.

3. " 'When *I* use a word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean—neither more nor less.'

'The question is,' said Alice, 'whether you *can* make words mean so many different things.'

'The question is,' said Humpty Dumpty, 'which is to be master—that's all.' " Lewis Carroll, *Through the Looking-Glass,* Chapter 6.