**D. FEDERICO CO., INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and W. J. Usery, Jr., Secretary of Labor, Respondents.**

**No. 76–1084.**

United States Court of Appeals, First Circuit.

Argued Sept. 15, 1976.

Decided June 16, 1977.

Alvin Jack Sims and Sims, Driscoll, Cahalane & Levine, P. C., Brockton, Mass., on brief, for petitioner.

Marc R. Hillson, Atty., U. S. Dept. of Labor, Washington, D. C., with whom William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for App. Litigation, and Allen H. Feldman, Asst. Counsel for App. Litigation, Washington, D. C., were on brief, for the Secretary of Labor, respondent.

Before COFFIN, Chief Judge, CLARK, Associate Justice, U. S. Supreme Ct. (Ret.),* CAMPBELL, Circuit Judge.

PER CURIAM:

This is a petition to review an order of the Occupational Safety and Health Review Commission (OSHRC), which found Petitioner D. Federico Co., Inc. (Federico) to be in violation of two regulations promulgated under the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 *et seq.*[1] The OSHRC found a serious violation of 29 C.F.R. § 1926.652(b),[2] for which Federico was fined $4,500, and a non-serious violation of 29 C.F.R. § 1926.651(i)(1),[3] for which the fine was $80.

Federico is a Massachusetts corporation engaged in construction. On August 8, 1973, OSHA compliance safety and health officer Dino Gigante inspected a Boston worksite, where four Federico employees were cleaning out an area under a pipe. One of these employees was working in an earth cavity 21 feet long, 13 feet wide and of varying depths, but 6.5 feet at the point where the employee was situated.

The vertical walls of the cavity were not sloped, shored, sheeted or braced, and the employee was working some three feet from a large overhang. This overhang created a concavity in the wall. Spoils were piled from 8 to 10 inches from the back wall, and the compliance officer noted that the soil was "soft and unstable," falling in small clumps and balls.

---

* Sitting by designation. This opinion was agreed upon by the Court and sent to the printer before Mr. Justice Clark's death.

1. The case was heard on September 15, 1976, at which time it was suggested that we withhold decision awaiting the opinion of the Supreme Court in *Atlas Roofing Company, Inc. v. Occupational Safety and Health Review Commission et al.,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). This was done. *Atlas,* as handed down, had no bearing on the issues involved here.

2. 29 C.F.R. § 1926.652(b) provides: "Sides of trenches in unstable or soft material 5 feet or more in depth shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working with them."

3. 29 C.F.R. § 1926.651(i)(1) provides: "In excavations which employees may be required to enter, excavated or other material shall be effectively stored and retained at least 2 feet or more from the edge of the excavation."

When Gigante told Federico's site superintendent about these conditions, the latter became upset, stating that he was being harassed, that it was the fourth time Federico's projects had been inspected in the Boston area, and that "they were never going to get any work done as long as [OSHA] kept bothering them."[4] He then abruptly ended the discussion, remarking that he "had a lot of work to do." Federico was cited for two violations: (1) a serious violation relating to the failure to shore or brace the sides of the cavity and (2) a non-serious violation for piling the excavated material too close to the edge of the cavity.

When the citations came before an administrative law judge on January 3, 1974, they were heard on the theory that the earth cavity was a "trench," defined by 29 C.F.R. § 1926.653(n) as "A narrow excavation made below the surface of the ground. In general, the depth is greater than the width, but the width of a trench is not greater than 15 feet." However, the judge's decision issued on April 11 vacated the serious citations, primarily on the ground that the cavity involved was an "excavation,"[5] not a "trench," and the non-serious violation was vacated because the "spoils from the excavation . . . presented no additional hazard" to the lone employee in the cavity during the inspection.[6]

The OSHRC reversed the administrative law judge, finding that the parties had agreed the cavity was a trench, thus disposing of the factual issue, but that the evidence clearly reflected a willful violation of the excavation standard as well, and that Federico was not prejudiced in any manner. Further, the non-serious violation under 29

C.F.R. § 1926.651(i)(1) did not require that an employee be subject to the hazard, but only that he be required to enter the trench. Fines of $4,500 for the serious violation and $80 for the non-serious violations were assessed, and Federico filed this petition for review, challenging the sufficiency of the evidence supporting the violations.

We have carefully reviewed the record, as we must, and find no merit in Federico's claims. Therefore, the decision of the Commission is affirmed.

The record clearly reflects that the cavity in question could be either a "trench" or an "excavation." The cavity was 21 feet long, 13 feet wide and of varying depths. The definition of a trench has but one limitation—it cannot be more than 15 feet wide. And although the language states that a trench is *generally* deeper than it is wide, the term "generally" does not foreclose the possibility of a trench being wider than it is deep.

■ However, the mere fact that the cavity herein is a "trench" is not dispositive of the question. As set out in Note 2, *supra*, the violation occurs only if sides of trenches in "unstable or soft" soil are unsupported, and Federico challenges the sufficiency of the evidence in this regard. The record reflects that Gigante saw the soil moving spontaneously, that it was "the same material all the way through" and that it was "all loose and running." The area director saw the soil, concluding that it was sandy and very unstable. The Secretary's expert witness, with nearly 40 years' experience in such matters, testified that the sample he examined an hour after it was taken from the trench was found to be

**4.** Prior to the August 8 inspection, Federico had been inspected four times. Four citations were issued, three of them alleging violations of trenching or excavation standards, one of which had become a final order.

**5.** 29 C.F.R. § 1926.653(f) defines an "excavation" as: "Any manmade cavity or depression in the earth's surface, including the sides, walls, or faces, formed by earth removal and producing unsupported earth conditions by reasons of the excavation. If installed forms or similar structures reduce the depth-to-width re-

lationship, an excavation may become a trench."

**6.** The judge raised the "trench"-"excavation" distinction *sua sponte*. Throughout the proceedings, Federico and the Secretary had labelled the cavity a "trench", and Federico had never raised or hinted at a distinction. From the record, it appears that the only question involved at the hearing was the stability of the soil.

soil of a "sandy loose type," adding that the same conclusion could be drawn from photographs of the trench. Federico's evidence was limited to one expert who testified that he could form no opinion from the photographs nor could he make any determination from an examination of the sample unless he was certain the sample was representative. In light of the evidence presented, we believe that the finding of unstable soil is adequately supported and should not be overturned. *Olin Construction Co. v. OSHRC and Brennan*, 525 F.2d 464 (2d Cir. 1975).

■ We need not discuss at any length the allegation that the non-serious violation for stacking spoils within two feet of the excavation is unsupported by the evidence. Federico does not seriously dispute this finding, nor could he in view of the facts. There is no question but what the spoils were stacked some 8″–10″ from the edge of the trench. This, in and of itself, constitutes a violation of the standard.

While we affirm the findings of the OSHRC, this case is representative of unnecessary appellate litigation created by less-than-adequate handling of the initial steps in OSHRC compliance proceedings. This appeal might never have been brought if, in the first instance, Federico had been charged with the "excavation" violation as opposed to the "trench" one. We found no resulting prejudice here primarily because the excavation in question can, with some slight effort, be made to fit into the definition of a trench under the regulations, and there was clearly no prejudice caused by the trench theory. Had the excavation not been a trench, we might have been inclined to hold differently. *See, e. g., Langer Roofing & Sheet Metal, Inc. v. Secretary of Labor*, 524 F.2d 1337 (7th Cir. 1975). In short, we would strongly urge OSHRC to straighten up its own trenches lest the employers it prosecutes be able to slip through unscathed.

Affirmed.

COFFIN, Chief Judge, concurring.

While I have some doubts about the ground on which the majority relies, I have no trouble in concurring in the result. If the commission had unequivocally found this hole in the ground to be a trench, its interpretation of the regulation would be entitled to great deference, but the commission did not rest on that theory, and the regulations alone do not support such a conclusion. The regulations state that a trench is, in general, deeper than it is wide. 29 C.F.R. § 1926.653(n). In contrast, this hole's width was twice its depth. I see no reason to put aside the general rule here. To the contrary, one would expect the rule to have most force when a hole very nearly exceeds the absolute maximum width for trenches, as this one does. Moreover, to be a trench a hole must be "narrow", *id.*, and a 13′ × 21′ rectangle is hardly narrow.

The safety standards for excavations and trenches differ considerably. In excavations, wall supports are needed only when "the employees are exposed to danger from moving ground." *Id.* § 1926.651(c). But when a deep trench is dug in unstable soil, its walls are apparently presumed to be dangerous, for all trench walls over five feet must be supported. *Id.* § 1926.652(b). These differing standards make sense in view of the general rule that a trench is deeper than its width. A collapsing trench wall is more likely to trap workmen than a similarly collapsing excavation wall.

For me, the critical question is whether this excavation's walls exposed any employees to danger. Although the parties did not clearly focus on this issue, the administrative law judge and the commission did. The ALJ found no danger; the commission disagreed. Although weakened by the contrary conclusion of the ALJ, *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the commission's finding has substantial support in the record as a whole; it is therefore conclusive. 29 U.S.C. § 660(a); *cf. Accu-Namics, Inc. v. OSHRC*, 515 F.2d 828, 834–35 (5th Cir. 1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). In the light of this finding, I concur.