593 F.2d 368
 7 O.S.H. Cas.(BNA) 1105, 1979 O.S.H.D. (CCH) P 23,426
KENT NOWLIN CONSTRUCTION COMPANY, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray
Marshall, Secretary of Labor, Respondents.
 No. 77-1258.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 26, 1978.
Decided March 2, 1979.
 
 Wayne E. Bingham, Pickering & Bingham, Albuquerque, N. M., for petitioner.
 Nancy L. Southard, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Asst. Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C., Leslie Omohundro, Legal Assistant, on brief), for respondents.
 
 
 1
 Before DOYLE and LOGAN, Circuit Judges, and STANLEY, Senior District Judge.*
 
 
 2
 STANLEY, Senior District Judge.
 
 
 3
 Kent Nowlin Construction Company petitions for review of an order of the Occupational Safety and Health Review Commission.
 
 
 4
 The petitioner was cited by the Secretary of Labor for a number of alleged violations of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 Et seq.) and specifically of regulations promulgated by the Secretary pursuant to the Act. All but two of the alleged violations have been resolved. The propriety of the decision of the Commission with respect to the two remaining citations is before us. There is no serious dispute as to the material facts. The petitioner and the Secretary differ as to the interpretation of the regulations and their application to the facts.
 
 
 5
 At all relevant times the petitioner was engaged in laying a 36-inch sewer line for the city of Albuquerque, New Mexico, in a cavity excavated by the petitioner in the median strip of a four lane highway in the city. The open segment of the cavity at the time of the claimed violations was about 50 feet long, 181/2 to 19 feet deep, 281/2 to 30 feet in width at the ground level and 6 feet in width at the bottom. The operation was an ongoing process, the cavity being filled as the pipe laying progressed. Materials excavated during the course of the work were stored and maintained less than two feet from the edge of the cavity. The petitioner did not at all times provide a ladder in the cavity located in such position "so as to require no more than 25 feet of lateral travel". Although there was a ladder in the cavity employees were observed working 35 feet from it.
 
 
 6
 In one of the citations here involved the Secretary alleged non-serious violation of 29 C.F.R. § 1926.562(h) for an asserted failure to provide an adequate means of exit in a trench. In the other citation the Secretary charged willful violation of 29 C.F.R. § 1926.651(i)(1) for an asserted failure to store and retain excavated material more than two feet from the edge of an excavation.
 
 
 7
 The petitioner was afforded a hearing on the charges before an administrative law judge who vacated the alleged non-serious violation of 29 C.F.R. § 1926.652(h) and affirmed the alleged willful violation of 29 C.F.R. § 1926.651(i)(1). The Commission, on review of the administrative law judge's decision, reversed his order vacating the citation for violation of 29 C.F.R. § 1926.652(h) and affirmed his assessment of a penalty for noncompliance with section 1926.651(i)(1).
 
 
 8
 29 U.S.C. § 655(a) authorizes the Secretary to promulgate occupational safety standards. Under this authority the Secretary has promulgated regulations for construction codified in 29 C.F.R. Part 1926, Subpart P of which covers "Excavations, Trenching, and Shoring". Section 1926.651 of Subpart P bears the caption "Specific excavation requirements". In section 1926.653(f) the term "excavation" is defined as
 
 
 9
 Any manmade cavity or depression in the earth's surface, including its sides, walls, or faces, formed by earth removal and producing unsupported earth conditions by reasons of the excavation. If installed forms or similar structures reduce the depth-to-width relationship, an excavation may become a trench.
 
 
 10
 The term "trench" is defined by section 1926.653(n) as
 
 
 11
 A narrow excavation made below the surface of the ground. In general, the depth is greater than the width, but the width of a trench is not greater than 15 feet.
 
 Section 1926.651(i)(1) provides that
 
 12
 In excavations which employees may be required to enter, excavated or other material shall be effectively stored and retained at least 2 feet or more from the edge of the excavation.
 
 Section 1926.652(h) provides that
 
 13
 When employees are required to be in trenches 4 feet deep or more, an adequate means of exit, such as a ladder or steps, shall be provided and located so as to require no more than 25 feet of lateral travel.
 
 
 14
 In their briefs counsel for the petitioner and for the Secretary are careful in their use of the words "trench" or "excavation", depending upon the thesis each is advancing. Whatever either may choose to call it, the asserted violations of regulations have to do with the same hole in the ground.
 
 
 15
 Section 1926.651 contains no requirement for the location of a ladder in excavations. Section 1926.652 does not require that excavated material be stored and retained at least two feet from the edge of a trench. The administrative law judge found that the cavity in question was not a trench and that section 1926.652(h) was not applicable. He vacated the citation alleging violation of that section. The Commission ruled that the cavity was a "trench" as that term is defined in section 1926.653(n). In a footnote to its decision the Commission states
 
 
 16
 A trench is one form of excavation. Therefore, where a particular hazard associated with a trench is addressed by a standard applying to "excavations" and no corollary standard is specifically applicable to "trenches" the provisions of the "excavation" standards apply. (Citations omitted.) § 1926.651(i)(1) has no corollary in "trenching" standards and therefore is applicable to this case. (Citations omitted.)
 
 
 17
 Commissioner Moran concurred with his colleagues' disposition of the section 1926.652(h) charge but dissented from the affirmance of the spoils pile violation
 
 
 18
 . . . because the evidence establishes that the cavity in question was a trench while the cited standard, 29 C.F.R. § 1926.651(i)(1), applies only to excavations.
 
 
 19
 He agreed with the majority that the cavity in question was a trench and opined that
 
 
 20
 If the Secretary of Labor had not intended that trenches and excavations be afforded separate treatment he should not have provided separate and distinct regulations for each.
 
 
 21
 We think it significant that there is disagreement among the Secretary's compliance officers, the administrative law judge, and even among the commissioners of the Review Commission as to the interpretation, interrelationship and application of the regulations involved. The Secretary, in citing the petitioner, treated the cavity as a trench for the purpose of one citation and as an excavation for the purpose of the other. The administrative law judge, remarking that while all trenches are also excavations all excavations are not trenches, held that the cavity in question was not a trench. Commissioners Barnako and Cleary ruled that the cavity clearly was a trench and in effect that it was also an excavation, so that the prescribed standards relating to excavations are equally applicable to trenches. Commissioner Moran, agreeing with his colleagues that the cavity was a trench, disagreed with their conclusion that an employer should be held liable irrespective of the classification of the cavity.
 
 
 22
 We recognize that the interpretation by the Secretary of his own regulations is entitled to deference but we are not required to rubber stamp administrative decisions that frustrate the congressional policy underlying a statute. Volkswagenwerk v. Federal Maritime Com'n., 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); Marathon Oil Co. v. Kleppe, 556 F.2d 982 (10th Cir. 1977). Although it was the expressed intent of Congress
 
 
 23
 . . . to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . . (29 U.S.C. § 651(b))
 
 
 24
 administrative regulations cannot be construed to mean what an agency intended but did not adequately express. Diamond Roofing v. Occupational S. & H. Rev. Com'n., 528 F.2d 645 (5th Cir. 1976).
 
 
 25
 In Usery v. Kennecott Copper Corp., 577 F.2d 1113 (10th Cir. 1977), we held that an employer is not required to assume the burden of guessing what the Secretary intended the safety regulations to mean. In that case we quoted from the opinion of Chief Judge Brown in Diamond Roofing v. Occupational S. & H. Rev. Com'n., supra :
 
 
 26
 An employer, however, is entitled to fair notice in dealing with his government. Like other statutes and regulations which allow monetary penalties against those who violate them, an occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires, and it must provide a reasonably clear standard of culpability to circumscribe the discretion of enforcing authorities and its agents. 528 F.2d at p. 649.
 
 
 27
 The petitioner should not be penalized for deviation from a standard the interpretation of which, in relationship with kindred standards, cannot be agreed upon by those who are responsible for compelling compliance with it and with oversight of the procedures for its enforcement.
 
 
 28
 We reverse the Commission's decision affirming the citation for non-serious violation of 29 C.F.R. § 1926.652(h).
 
 
 29
 29 C.F.R. § 1926.653(f) defines an "excavation" as
 
 
 30
 Any manmade cavity or depression in the earth's surface, including its sides, walls, or faces, formed by earth removal and producing unsupported earth conditions by reason of the excavation. If installed forms or similar structures reduce the depth-to-width relationship, an excavation may become a trench.
 
 
 31
 No forms or similar structures were installed. Clearly the cavity came within the definition. 29 C.F.R. § 1926.651(i)(1) requires that
 
 
 32
 In excavations which employees may be required to enter, excavated or other material shall be effectively stored and retained at least 2 feet or more from the edge of the excavation.
 
 
 33
 The petitioner concedes that the excavated material was stored within two feet of the edge of the excavation and that there was a technical violation of the standard, but asserts that the only possible purpose of the standard is to prevent spoiled materials from falling back into an excavation and that, because of the composition of the material removed, it was unlikely that any of it would fall or slide into the cavity. The administrative law judge found that, while none of the material excavated by the petitioner had at any time fallen into the cavity, it was not impossible that some of it might slide into the ditch. It does not require any stretch of the imagination to visualize the sloughing of freshly excavated earth from a mound or ridge eight feet high and nine feet wide at its base piled to the very edge of an excavation eighteen feet in depth. The Act is intended to prevent the first injury which might result from unsafe conditions and the regulations are designed to compel the maintenance of safe working conditions, not just to assess penalties for injuries already suffered by workmen.
 
 
 34
 The petitioner contends that its failure to comply with the standard was not willful and that it did not deliberately, knowingly and consciously flout the Act or the regulation. The city of Albuquerque had required that the traffic lanes remain open during the progress of the sewer laying work. The petitioner, with knowledge of the existence of the standard, but because the lanes could not otherwise be kept open, chose not to comply with the standard because, as said in its brief, ". . . it was felt that maintenance of the two foot standard was impractical as well as unsafe" and that ". . . representatives of the company were concerned about it but there were other overriding considerations" and its representatives ". . . were concerned about the standard but had other and more imparitive (sic) concerns." The Commission found that the petitioner had acted without malice and had demonstrated a concern for the safety of its employees entitling it to credit for good faith. The Commission, for this reason, affirmed the decision of the administrative law judge reducing to $500 the penalty of $9,000 recommended by the Secretary. In its decision the Commission, pointing out that violation of the Act and its constituent regulations may be found to be willful even without the presence of malicious intent, found that the petitioner, although aware of the standard, consciously and deliberately decided not to comply with its requirements. This finding is supported by the evidence.
 
 
 35
 Although some courts have held that willfulness, in the context of the Act, connotes defiance or reckless disregard to consequences "more than merely voluntary action or omission" (see Frank Irey, Jr., Inc. v. Occupational Safety & H. R. Com'n., 519 F.2d 1200 (3d Cir. 1974), Aff'd en banc, 519 F.2d 1215 (1975)) others have held to the contrary. (See Goodman v. Benson, 286 F.2d 896 (7th Cir. 1961); F. X. Messina Const. Corp. v. Occupational S. & H. R. C., 505 F.2d 701 (1st Cir. 1974).)
 
 
 36
 In United States v. Dye Const. Co., 510 F.2d 78 (10th Cir. 1975), a criminal case brought under 29 U.S.C. § 666(c), this court approved the following jury instructions:
 
 
 37
 The failure to comply with a safety standard under the Occupational Safety and Health Act is willful if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally.
 
 
 38
 As in Messina, supra, the petitioner intentionally and voluntarily chose not to comply with the two-foot regulation rather than to disregard the directions of the city of Albuquerque that two traffic lanes be kept open. The Commission's conclusion of willfulness was fully warranted.
 
 
 39
 We direct the enforcement of the Commission's order assessing a penalty of $500 for willful violation of 29 C.F.R. § 1926.651(i)(1).
 
 
 40
 WILLIAM E. DOYLE, Circuit Judge, concurs in the part of the decision which approves the enforcement of the Commission's order assessing a penalty for willful violation of 29 C.F.R. § 1926.651(i)(1), and dissents from that part which reverses the Commission's decision affirming the citation for non-serious violation of 29 C.F.R. § 1926.652(h).
 
 
 
 *
 Of the District of Kansas, sitting by designation