597 F.2d 234
 7 O.S.H. Cas.(BNA) 1253, 1979 O.S.H.D. (CCH) P 23,495
H-30, INC., Petitioner,
v.
Ray MARSHALL, Secretary of Labor, and Occupational Safety
and Health Review Commission, Respondents.
 No. 77-1759.
 United States Court of Appeals,
Tenth Circuit.
 Argued Nov. 14, 1978.
Decided April 25, 1979.
 
 James D. Oliver, of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for petitioner.
 Charles I. Hadden, U. S. Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for Appellate Litigation, and Dennis K. Kade, Asst. Counsel for Appellate Litigation, Washington, D. C., with him on the brief), for respondent Secretary of Labor.
 Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This is a petition to review an order of the Occupational Safety and Health Review Commission sought under 29 U.S.C. § 660(a).
 
 
 2
 The petitioner was cited for a "serious violation" by the Secretary of Labor after a representative of an area office visited the location of an oil and gas well being drilled by petitioner. The citation was under the "general duty" clause, section 5(a)(1) of the Occupational Safety and Health Act (29 U.S.C. § 654). The violation asserted was that the petitioner in its drilling operations permitted employees to ride the long clamp attached to the traveling block used to lift pipe. They would ride standing on it from the floor upward a distance of some fifty feet to a work platform which was part of the rig, and apparently returned the same way.
 
 
 3
 The matter came before an administrative law judge who held that petitioner was in violation. The Commission reviewed the proceedings; agreed with the findings and conclusions of the administrative law judge; and entered the order here sought to be reviewed. The OSHA inspector in concluding that there was a hazard in this use of the hook (or the "elevator" as it was also called), applied the standards (American National Standards Institute) for truck cranes, railroad and crawler cranes, and for derricks or cranes used in the construction of buildings. Thus it was his opinion that the construction crane standards should be applied to the drilling rigs.
 
 
 4
 An officer of petitioner and a safety consultant testified that in Oklahoma and Texas riding of the hook was not considered to be a violation. However, he stated that the same act had been cited as a violation by OSHA in Colorado, Wyoming and Montana. He also testified that a state standard had been set in Utah and Wyoming which permitted employees to ride the hook if safety belts were used. He also indicated that OSHA had taken no position on the practice in Kansas before this citation. The administrative law judge found:
 
 
 5
 "Respondent (H-30) suffered a real dilemma; namely, being under the impression that in some areas such riding was contemplated as not being hazardous and in other areas where such block riding had not been cited by the Occupational Safety & Health Administration where similar operations were undertaken.
 
 
 6
 "Research establishes that respondent was absolutely correct in its misapprehension."
 
 
 7
 The record shows that there was an unprotected ladderway as part of the rig which could be used by the men to reach the work platform from the floor of the rig. The most that can be said about the record is that this was an alternate route to the platform. The record does not support the conclusion that it was safer. It is obvious that all the work on the derrick floor, and the use of the platform in question in handling of pipe, were dangerous.
 
 
 8
 The use of the "general duty" clause (section 5(a)(1) of the Act) is a reasonable and practicable application of the purpose and aim of the Act to situations where there is an accepted standard in the industry concerned. The obvious problem in the case before us, however, is the attempt to apply standards from other industries to the devices used by petitioner on the theory that they are similar mechanically or in purpose. However, Congress in the general duty standards included the concept that The industry recognized certain hazards, and had met them with generally accepted standards. This, of course, contemplates some sort of consensus in this general acceptance and recognition which cannot necessarily be extrapolated from one industry to another, especially so where there is nothing to show that the second group has not generally recognized the hazard and has adopted no standards. Some general similarity in purpose of the devices is not enough to carry over "recognition" from one industry to another. See the reference to the use of industry standards in Usery v. Kennecott Copper Corp., 577 F.2d 1113 (10th Cir.). There is no indication in the record before us that the oil well drilling industry had any part or was consulted in the development of the construction industry standards (American National Standards Institute). See Usery v. Kennecott Copper Corp., supra.
 
 
 9
 It is also apparent from the record that the agency adopted different views of the practice here concerned in different areas. See Kent Nowlin Construction Co. v. Occupational Safety and Health Review Commission, 593 F.2d 368 (10th Cir.); Industrial Union Dept., AFL-CIO v. Hodgson, 499 F.2d 467 (D.C.Cir.); and Associated Industries of N. Y. State, Inc. v. United States Dept. of Labor, 487 F.2d 342 (2d Cir.).
 
 
 10
 The agency has thus failed to demonstrate that the standards it sought to apply to the petitioner come within the "general duty" provisions of the statute. There was no showing that the drilling industry or petitioner considered the practice to be a "recognized hazard." The agency did not present a witness to show that a hazard was "recognized." The drilling industry is large and active, but no evidence was offered. Reference should again be made to the variations in OSHA's attitude toward the practice in different states and to the statement of the administrative law judge quoted above. There is no substantial evidence of "actual knowledge" whether it be significant or not.
 
 
 11
 The order appealed from must be, and is hereby set aside.