609 F.2d 940
 7 O.S.H. Cas.(BNA) 1999, 1979 O.S.H.D. (CCH) P 24,089
LLOYD C. LOCKREM, INC., Petitioner,
v.
UNITED STATES of America, Occupational Safety and Health
Review Commission and Ray Marshall, Secretary of
Labor, United States Department of
Labor, Respondents.
 No. 78-2117.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 12, 1979.
 
 B. E. Longo, Moulton, Bellingham, Longo & Mather, Billings, Mont., for petitioner.
 John A. Bryson, Washington, D. C., for respondents.
 On Petition for Review of an Order of the Occupational Safety and Health Review Commission.
 Before COWEN, United States Court of Claims Judge,* KILKENNY and HUG, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 
 1
 This is a petition for review of an order of the Occupational Safety and Health Review Commission (OSHRC). The review arises out of a decision by OSHRC under which petitioner (Lockrem) was fined $100.00 for alleged violations of the Safety Act. The litigation has been pending since September 5, 1973, having been bandied back and forth between Administrative Law Judges and the Commission during the intervening period of time.
 
 FACTUAL BACKGROUND
 
 2
 This story opens almost six years ago, when Lockrem was engaged in laying a sewer line in Helena, Montana. Lockrem was digging a hole in the ground which at any one time was approximately 12-141/2 feet deep, 50 feet long, and varying from 8 feet wide at the bottom to 19 feet wide at the top. Two pieces of mobile equipment were used in this operation: a backhoe, which excavated the trench at one end, and a front-end loader, which first dumped bedding gravel into the trench and then bulldozed the dirt back into the trench to fill in over the pipe as it was laid. A plastic traffic cone marked the stopping place for the loader as it approached the trench, and a signalman also warned the loader operator where to stop.
 
 
 3
 On September 5, 1973, the Secretary issued a citation pursuant to 29 U.S.C. § 658(a), charging Lockrem with serious violations of 29 CFR § 1926.651(c), a specific excavation standard, and § 1926.652(e), a specific trenching standard. These sections provide:
 
 
 4
 29 CFR § 1926.651(c): "The walls and faces of all Excavations in which employees are exposed to danger from moving ground shall be guarded by a shoring system, sloping of the ground, or some other equivalent means." (Emphasis supplied.)
 
 
 5
 29 CFR § 1926.652(e): "Additional precautions by way of shoring and bracing shall be taken To prevent slides or cave-ins, when Excavations or trenches are made in locations adjacent to backfilled excavations, or where excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source." (Emphasis supplied.)
 
 A violation is serious if:
 
 6
 "(T)here is a substantial probability that death or serious physical harm could result from a condition which exists . . . in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."
 
 
 7
 29 U.S.C. § 666(j). After Lockrem filed a notice of contest, the Secretary filed his complaint pursuant to 29 CFR § 2200.33. The complaint amended the citation to charge a violation of 29 CFR § 1926.651(s), another excavation standard, instead of the violation of § 1926.652(e), the trenching standard. § 1926.651(s) provides:
 
 
 8
 "Where mobile equipment is utilized or allowed adjacent to excavations, substantial stop logs or barricades shall be installed. If possible, the grade should be away from the excavation."
 
 
 9
 The complaint stated that this amendment was necessary to state the applicable standard.
 
 
 10
 The evidence produced at the hearing concerned whether the alleged violations had occurred and whether the Hole in the ground was a trench or an excavation. In the Secretary's post-hearing brief, he argued for the first time that even if the hole was a trench, the excavation standards as well as the trenching standards were applicable to it.[1]
 
 
 11
 The Administrative Law Judge (ALJ) held that excavation standards did not apply to trenches. He further held that, in any event, Lockrem had not violated either § 1926.651(c) or § 1926.651(s). With regard to the alleged § 1926.651(s) violation, he found that there was no evidence that stop logs or barricades could be used while the loader bulldozed the dirt, but apparently did not consider the situation in which the loader approached the trench with its bucket up in the air to dump the gravel. The ALJ vacated the citation for these reasons. The Secretary then sought discretionary review before OSHRC, pursuant to 29 CFR § 2290.91. Review was sought only with respect to the violation of § 1926.651(s), not with respect to the § 1926.651(c) violation, which had also been vacated by the ALJ. The OSHRC reversed the ALJ in a 2-1 decision on the ground that where the specific trenching standards do not cover a particular hazard it is appropriate to apply a specific excavation standard which addresses the danger. The OSHRC also stated that Prima facie evidence of a violation existed, but that impossibility of compliance was an affirmative defense, which Lockrem could attempt to prove. The Commission then remanded the case to the ALJ to make appropriate findings in light of their decision. The ALJ, without holding a further hearing, found that the excavation standard was applicable to trenches, and that Lockrem had not proven impossibility of compliance. He fined Lockrem $150.00 for a serious violation.
 
 
 12
 After Lockrem filed a petition for rehearing to the OSHRC, two commissioners directed review of the decision. The OSHRC again remanded the case to the ALJ, stating that Lockrem had not had a full opportunity to litigate the question of impossibility of compliance. The case continued on this tortuous path back to another ALJ. The new ALJ held another hearing wherein Lockrem presented evidence on the question of impossibility of compliance, as well as the other issues. The ALJ found for the Secretary and assessed a fine of $100.00. The decision, pursuant to 29 U.S.C. § 661(i), became a final order of the OSHRC on May 12, 1978.
 
 ISSUES PRESENTED
 
 13
 (I) Did Lockrem fail to exhaust its administrative remedies?
 
 
 14
 (II) Are the regulations so ambiguous as to be unenforceable?
 
 I.
 
 15
 The Secretary argues that the case should be dismissed due to Lockrem's failure to exhaust its administrative remedies. He contends that Lockrem should have applied to the Commission for review yet another time.
 
 
 16
 Under normal circumstances, a party must exhaust its remedies before it can obtain judicial review of an agency decision. Eluska v. Andrus, 587 F.2d 996 (CA9 1978). There is authority that where the exhaustion requirement is embodied in a statute, exhaustion is necessary before the reviewing court has jurisdiction to consider an issue presented by a petitioning party. Eluska at 999; Montgomery v. Rumsfeld, 572 F.2d 250, 252-53 (CA9 1978). The statute providing for review of decisions of the OSHRC is 29 U.S.C. § 660(a) and it clearly incorporates the exhaustion requirement. However, it also provides that in extraordinary circumstances, the exhaustion requirement does not apply. The statute reads, in pertinent part: "No objection that has not been urged before the Commission shall be considered by the court, Unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." (Emphasis supplied.)The Secretary argues that Keystone Roofing Co. v. OSHRC, 539 F.2d 960 (CA3 1976), is directly on point. There, the majority of the court held that the failure to petition for a discretionary review required a dismissal. The court held this was necessary even though the Commission in an earlier case had passed on the same issue and had ruled against petitioner's contentions. Under our facts, Keystone is not controlling. Lockrem satisfied the exhaustion doctrine by raising objections on all issues. They were resolved against it either in the first or in the second proceeding. The Commission had two opportunities to rule on all the issues. In the cases cited by the Secretary, the agency involved had never, in the context of the case before it, been presented with the issue urged by the petitioner to the courts. For example, See NLRB v. Children's Baptist Home of Southern California, 576 F.2d 256 (CA9 1978); Stockwell Mfg. Co. v. Usery, 536 F.2d 1306 (CA10 1976); Felton Const'n. Co. v. OSHRC, 518 F.2d 49 (CA9 1975).
 
 
 17
 Lockrem presented its objections to the Commission and gave it an opportunity to rule on the objections. The OSHRC twice ruled against Lockrem in this proceeding. On the facts of this case, we hold that the "extraordinary circumstances" test of 29 U.S.C. § 660(a) has been met and that we have jurisdiction to pass on the issue presented by Lockrem's petition.
 
 II.
 
 18
 The principal issue before us in this case is whether the specific excavation and trenching requirements of the regulations and the definitions are so ambiguous as to be unenforceable. The Commission spoke to this issue in one case, but was overruled on review on the ground that the hole in that case was not a trench. Kent Nowlin Const'n. Co. v. OSHRC, 593 F.2d 368 (CA10 1979). Nowlin actually upheld a finding of a violation of an excavation standard. There, the court concluded that there was no way of knowing whether the trenching or excavation or both regulations applied to a hole in the ground because the standards, as written, were so ambiguous that they were impossible to apply. The court noted the disagreement among the Secretary's compliance officer, the ALJ, and even among the commissioners themselves concerning the interpretation, interrelationship and application of the regulations involved, concluding that an employer should not be penalized for "deviation from a standard the interpretation of which, in relationship with kindred standards," could not be agreed upon by those who were responsible for compelling compliance. Nowlin at 371.
 
 
 19
 We recognize that great deference must be paid to the Secretary's interpretation of his own regulations, particularly when affirmed by the Commission, Irvington Moore, Inc. v. OSHRC, 556 F.2d 431, 434 (CA9 1977). Nonetheless, the law is that an employer is not required to assume the burden of guessing what the Secretary intended the safety regulations to mean. Nowlin at 371. Laws and regulations must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Diebold, Inc. v. Marshall, 585 F.2d 1327, 1335 (CA6 1978).
 
 
 20
 The Secretary here contends that his interpretation is reasonable and interprets the standards so as to give effect to the natural and plain meaning of their words. This rule would be easy to apply if it were not for the patent ambiguity in the regulations. Here, the Secretary initially argued to the ALJ that the hole in question was not a trench, since it was wider than 15 feet at the top. However, this argument was abandoned on review on this appeal and the Commission treats the hole as a trench. Even in D. Federico Co., Inc. v. OSHRC, 558 F.2d 614 (CA1 1977), where the First Circuit held that the excavation standards were applicable to trenches, it also condemned the procedures used by OSHRC and urged it "to straighten up its own trenches lest the employers it prosecutes be able to slip through unscathed." Federico at 617.
 
 
 21
 The Secretary's argument to the contrary notwithstanding, it is far from clear from the natural and plain meaning of its words that the excavation standard, 29 CFR § 1296.651(s), applies to trenches. § 1926.651 is labeled "Specific Excavation Requirements." While it must be acknowledged that both "excavations" and "trenches" are holes in the ground, there is no indication whatsoever that the "specific excavation requirements" apply to trenches. The fact that the Secretary labeled separately each set of standards and included the word "specific" in each title would indicate that the specific excavation requirements apply to excavations which are not trenches and that only the "specific trenching requirements" apply to the trenches. The maxim Expressio unius est exclusio alterius applies. Furthermore, the testimony at the hearings clearly demonstrated that other employers in the area were unaware that excavation standards were applicable to trenches. Finally, the evidence supports the view that if the requirements as to excavations would also apply to trenches, it would be impossible to comply with both sets of regulations and still perform the trenching operation.
 
 
 22
 We note the considerable confusion within the OSHRC and of the ALJ's over the question of whether the "specific excavation standards" apply to trenches. We reiterate that an employer should not be held to standards, the application of which cannot be agreed upon by those charged with their enforcement. Regulations cannot be construed to mean what an agency intended but did not adequately express. Kent Nowlin Const'n. Co. v. OSHRC, supra; Diamond Roofing Co. v. OSHRC, 528 F.2d 645 (CA5 1976).
 
 CONCLUSION
 
 23
 The Secretary is presumed to have the expertise with which to draft and promulgate unambiguous regulations covering the subjects under his control. Here, he failed in his duty. We hold that the regulations and definitions as presently drafted are ambiguous to an extent that it is impossible for an employer to interpret them with any degree of certainty and conclude that they are so vague and indefinite that they violate the due process clause of the Constitution. It was error to apply the excavation standards to the trench here involved. Consequently, the petition for review must be granted and the order of the OSHRC vacated and the case remanded for dismissal.
 
 
 
 *
 The Honorable Wilson Cowen, Senior Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 The definitions of the two are:
 " 'Excavation' Any manmade cavity or depression in the earth's surface, including its sides, walls or faces, formed by earth removal and producing unsupported earth conditions by reason of the excavation. If installed forms or similar structures reduce the depth-to-width relationship, an excavation may become a trench." 29 CFR § 1926.653(f).
 " 'Trench' A narrow excavation made below the surface of the ground. In general, the depth is greater than the width, but the width of a trench is not greater than 15 feet." 29 CFR § 1296.653(n).