**TEXAS EASTERN PRODUCTS
PIPELINE COMPANY,**
Petitioner,

v.

**OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION,**
and William E. Brock, Secretary of Labor, Respondents.

No. 86–2201.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1987.

Decided July 29, 1987.

As Amended Aug. 10, 1987.

Mary K. Williams, Texas East. Corp., Houston, Tex., for petitioner.

Barbara Werthmann, Dept. of Labor, Ofce. of Solicitor, Washington, D.C., for respondent.

Before WOOD, POSNER and MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner, Texas Eastern Products Pipeline Company (Texas Eastern), seeks review of a final order of the Occupational Safety and Health Review Commission (Commission).[1] The order affirmed the issuance of a citation to Texas Eastern by the Occupational Safety and Health Administration (OSHA) for violating a construction safety standard at 29 C.F.R. § 1926.-651(i)(*l*) (1986).[2] That standard requires excavated material to be stored at least two feet back from the edge of an excavation. The parties have stipulated that the excavated material at issue in this case was piled up to the edge of the excavation, not two feet back. There is a dispute, however, as to whether or not the OSHA regu-lation is applicable to the particular type of excavation considered here.[3] Texas Eastern argues that there is a distinction in the regulations between an "excavation" and a "trench" and that the regulation it allegedly offended is not applicable to a "trench," but only to an "excavation." The parties conceded that Texas Eastern's employees were working in a "trench"-type excavation. The penalty assessed was $240.

Our standard of review in this case is governed by the Administrative Procedure Act (APA). 5 U.S.C. §§ 551 *et seq.* (1982). For questions of law the APA on its face mandates *de novo* review. 5 U.S.C. § 706 (1982) ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law...."); *FTC v. Indiana Federation of Dentists,* 477 U.S. 447, 106 S.Ct. 2009, 2015–16, 90 L.Ed.2d 445 (1986). Reviewing courts, however, frequently temper that general mandate by according some deference to an agency's legal interpretations. Although a reviewing court may merely acknowledge a prior agency ruling, *e.g., id.; Skidmore v. Swift & Co.,* 323 U.S. 134, 139–40, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (agency's interpretations "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"), most often a reviewing court will accord some substantial deference to an agency's interpretation of its own statutes or regulations, *NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 131, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944) (agency's interpretation "is to be accepted if it has 'warrant in the record' and a reasonable basis in the law"); *ITEL Corp. v. United States Railroad Retirement Board,* 710 F.2d 1243, 1244 (7th Cir.1983)

---

1. Texas Eastern contested the citation, but an administrative law judge of the Commission affirmed it. Texas Eastern petitioned for discretionary review by the full Commission. Because no member of the Commission directed review, the administrative law judge's decision became the final order of the Commission on May 29, 1986.

2. 29 C.F.R. § 1926.651(i)(*l*) (1986) provides:
   In excavations which employees may be required to enter, excavated or other material shall be effectively stored and retained at least 2 feet or more from the edge of the excavation.

3. The excavation had been dug by a contractor, not named as a party to this litigation, who uncovered a Texas Eastern pipeline. The unearthing of the pipeline required Texas Eastern's employees to work in the excavation to inspect and repair the pipeline.

("A 'reasonable basis' test is appropriate when passing upon an agency's construction of the statutes which it administers.").

In reviewing the Commission's final order for other than purely legal issues, on the other hand, the APA directs that the "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be unsupported by substantial evidence." 5 U.S.C. § 706(2)(E) (1982). We apply the substantial evidence standard of review, rather than the arbitrary and capricious standard, because the APA requires us to do so when we review an order arising from an adjudicatory hearing held by an administrative agency pursuant to statutory command. 5 U.S.C. §§ 554(a), 556 & 706(2)(E); 29 U.S.C. §§ 659(c) & 660(a) (1982). As we have explained previously:

> Substantial evidence exists if the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). A preponderance of the evidence is unnecessary, as long as "there is a rational connection between the facts found and the choice made." *Bloomer Shippers Association v. ICC*, 679 F.2d 668, 672 (7th Cir.1982).

*International Union of Operating Engineers, Local 150 v. NLRB*, 755 F.2d 78, 81 (7th Cir.1985).

We must now examine what the technical differences may be under the regulations between an excavation and a trench, whether the Secretary of Labor's and the Commission's interpretation of the safety standards is entitled to deference, and whether Texas Eastern had fair notice of that interpretation.

For practical purposes the difference between an excavation and a trench is one of width, a trench being a narrow excavation.[4] Both, however, may be hazardous. The problem arises in this case because the regulation requiring material to be stored at least two feet from the edge appears with the specific excavation requirements, not the specific trenching requirements, and in its text mentions only excavations, not trenches. The relationship and overlap between the excavating and trenching requirements creates the problem. Texas Eastern contends that the requirements for excavations do not apply to trenches, that only the standards addressed specifically to trenches apply to trenches. The Commission's view of the Secretary's regulations, on the other hand, is that the excavation standards apply equally to trenches, except where a more specific trenching provision applies.[5]

In interpreting OSHA's regulations we adhere to the general rule that the Secretary of Labor's interpretation of the statute and regulations is entitled to deference if the interpretation is reasonable. *In re Metro-East Manufacturing Co.*, 655 F.2d 805, 810 (7th Cir.1981). Likewise, if the Secretary and the Commission have determined that the standards are all applicable, that finding is entitled to great weight. *Wisconsin Electric Power Co. v. OSHRC*, 567 F.2d 735, 738 (7th Cir.1978). Our adherence to those principles should not, however, be used as a blanket excuse to overlook OSHA's drafting derelictions lest the good purposes of the safety rules be eroded.

In this particular case the agency's interpretation deserves deference even though the agency could have easily avoid-

---

4. 29 C.F.R. § 1926.653(f) (1986) defines an excavation as:

   Any manmade cavity or depression in the earth's surface, including its sides, walls, or faces, formed by earth removal and producing unsupported earth conditions by reasons of the excavation. If installed forms or similar structures reduce the depth-to-width relationship, an excavation may become a trench.

   29 C.F.R. § 1926.653(n) (1986) defines a trench as:

   A narrow excavation made below the surface of the ground. In general, the depth is greater than the width, but the width of a trench is not greater than 15 feet.

5. Had the Secretary incorporated this one-sentence clarification of his view into the regulations, this $240 federal lawsuit could have been avoided.

ed or cured the ambiguity to everyone's advantage. It appears in the texts of the two provisions that excavations and trenches are not mutually exclusive—a trench is merely defined as a particular type of excavation, specifically a narrow one. Consistent with that reading section 1926.652, which contains the specific trenching requirements, sometimes uses both words, "trenches" and "excavation," in common without distinction.[6] A hole in the ground is, after all, a hole in the ground no matter what its shape or with whatever other name you may choose to label it.

If we were to interpret the regulations as Texas Eastern would have us do, then a number of safety requirements provided in the excavation section (§ 1926.651), concerning, for instance, electrocution, fire, oxygen deficiency, and the storage of material at issue here, would not apply to trenches. This reading would exclude important safety requirements without discernable justification. A trench can be understood to be a certain type of excavation which, because of its narrowness, requires some additional safeguards because of the increased possibility of a workman being trapped by a collapsing wall. *D. Federico Co. v. OSHRC*, 558 F.2d 614, 617 (1st Cir. 1977) (Coffin, C.J., concurring).[7] A common sense reading, in spite of the fact that the regulations could be written more

clearly, suggests that the general excavation standard is to apply, except where a more particular standard is made "specifically applicable to the same hazard." *Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1380 (D.C.Cir.1985). It is also fundamental to the Occupational Safety and Health Act that it be construed liberally to effectuate its purpose of safe working conditions. 29 U.S.C. § 651(b) (1982); *see Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11–13, 100 S.Ct. 883, 890–91, 63 L.Ed.2d 154 (1980). This view of the regulations is not entirely a judicial invention. Section 1910.5(c) of the regulations provides specifically that general standards supplement specific standards.[8] "[T]he legislative scheme ... contemplates ... that general safety standards will supplement specific safety standards by filling those gaps necessarily remaining after the promulgation of specific standards." *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 810 (3d Cir.1985). Texas Eastern, however, argues that the trenching and excavation regulations are mutually exclusive. Texas Eastern points out that each of the sections, for instance, contains sidewall shoring requirements, and therefore each section must be considered independent of the other.

Texas Eastern relies on *Lloyd C. Lockrem, Inc. v. United States*, 609 F.2d 940

---

**6.** *E.g.*, 29 C.F.R. § 1926.652(d) (1986) ("Materials used for sheeting ... shall be designed and installed so as to be effective to the bottom of the excavation."); § 1926.652(i) ("Bracing or shoring of *trenches* shall be carried along with the *excavation*.") (emphases added); and § 1926.652(e) (additional shoring and bracing required when "*excavations* or *trenches* are made in locations adjacent to backfilled *excavations,* or where *excavations* are subjected to vibrations") (emphases added).

**7.** The court in *D. Federico*, 558 F.2d at 617, also suggests as do we on related grounds that the litigation should have been unnecessary. Texas Eastern argues that we should vacate the Commission's order here because the Secretary is unimpressed with judicial admonitions, like the one he received in *D. Federico*, about clarifying his regulations. An additional admonition, however, is more advisable now than to risk sacrificing the safety of workers were we to embrace Texas Eastern's strained interpretation

of the standards merely to gain the Secretary's attention. If this type of case continues to unjustifiably occupy the court's time, this court will consider possible remedies which may be effective without sacrificing the safety of workers which could result from Texas Eastern's own interpretation of the regulations.

**8.** 29 C.F.R. § 1910.5(c) (1986) provides:

(1) If a particular standard is specifically applicable to a condition, practice, means, method, operation, or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation, or process....

(2) On the other hand, any standard shall apply according to its terms to any employment and place of employment in any industry, even though particular standards are also prescribed for the industry, ... to the extent that none of such particular standards applies.

(9th Cir.1979), and *Kent Nowlin Construction Co. v. OSHRC*, 593 F.2d 368 (10th Cir.1979), for its argument that the trenching and excavation standards are mutually exclusive, not cross-applicable. However, at least one other circuit has held that an excavation regulation applies to a trench even while suggesting that the Commission "straighten up its own trenches." *D. Federico*, 558 F.2d at 617. It is true that the court in *Lockrem*, in considering a different section of the specific excavation requirements, found "no indication whatsoever" that specific excavation requirements apply to trenches since each set of standards is labelled separately as "specific" standards applicable to that particular category. 609 F.2d at 944. But there is some distinction between *Lockrem* and the present case. In *Lockrem* the court took notice of evidence that employers were unaware that the excavation standards were applicable to trenches. There is no such evidence here. *Nowlin*, on the other hand, is a good example of the confusion that can arise among enforcement officials about a hole in the ground—confusion as to whether the hole is a ditch or an excavation as well as to the interrelationship and application of the regulations involved. In *Nowlin* there was disagreement among the Secretary's compliance officers, the administrative law judge, and even among the commissioners of the Review Commission, and on the court itself with a member dissenting in part. Safety is the business of the Secretary, but it fosters unsafety to have unclear regulations. Nevertheless, we find that a common sense consideration of the regulations with a view toward safety compensates for the cloudy regulations.

■ Finally, Texas Eastern argues that the regulations do not provide fair notice that trenching is also subject to the excavation requirements with the result that enforcement of the citation deprives Texas Eastern of due process. There is no showing that Texas Eastern had actual notice, but due process requires only a fair and reasonable warning of even imprecisely drafted regulations. *Faultless Division, Bliss & Laughlin Industries, Inc. v. Secretary of Labor*, 674 F.2d 1177, 1185 (7th Cir.1982). Both the Secretary and the Commission have consistently expressed the view since 1976 that excavation requirements apply to trenches. The violations in *Lockrem* and *Nowlin* occurred in 1973 and 1974 respectively. But following those violations, in 1976, in *Dobson Brothers Construction Co.*, 1975–1976 O.S.H.Dec. (CCH) ¶ 20,429, 24,391 (Rev.Comm'n Feb. 18, 1976), the Commission issued its first interpretation of the trenching and excavation requirements, which is consistent with the view now urged by the Commission. It was not an interpretation thought up overnight and applied as a surprise to Texas Eastern. Texas Eastern, as a major pipeline company, in which trenching and excavating are a part of its routine, had ample opportunity to know of the earlier interpretation, should have been able to see the sense of the regulations on their face, and if still in doubt Texas Eastern should have taken the safer position both for its employees and for itself. The regulations, while not models of clarity, should not have been incomprehensively vague to Texas Eastern. Texas Eastern made no inquiry. Much information was available that would have helped avoid this controversy. It should not take an expert in the business to realize that piles of large rock and earth piled high on the edge of a six-foot deep, four- to five-foot wide, trench were a danger to the employees working in the trench. Texas Eastern should have needed no government regulation to protect its own employees from injury. There was substantial evidence that Texas Eastern had notice sufficient to satisfy due process considerations.

In affirming the Commission's order we do not condone the deficiencies in the safety standards which could be easily corrected by the Secretary to save the time of all parties, including this court. Most of all, however, more precise standards would make abundantly clear what was required for safety. The possible dangers to workers created by the Secretary's own imprecise standards enhance the dangers the Secretary otherwise seeks to prevent. Each party shall bear its own costs.

AFFIRMED.

MANION, Circuit Judge, dissenting.

In the past ten years at least three circuits have criticized these regulations. See *Lloyd C. Lockrem, Inc. v. United States,* 609 F.2d 940 (9th Cir.1979); *Kent Nowlin Construction Co. v. OSHRC,* 593 F.2d 368 (10th Cir.1979); *D. Federico Co., Inc. v. OSHRC,* 558 F.2d 614 (1st Cir.1977). Two of these circuits have rejected the position the Secretary and the Commission urge us to adopt in the present matter. *See Lloyd C. Lockrem, Inc.,* 609 F.2d at 943–44; *Kent Nowlin Construction Co.,* 593 F.2d at 370–71. In spite of the obvious problems that the regulations create, the Secretary has refused to adopt simple clarifying amendments. The Secretary and the Commission continue to insist that the *specific* excavation requirements cover trenching operations. Despite misgivings, the majority upholds the Commission's interpretation of these regulations. I respectfully dissent because I believe the Commission's interpretation of the excavation and trenching regulations is unreasonable, and because the Secretary and the Commission insist on perpetuating a problem that, for safety's sake, should be cured.

The Secretary has a duty to draft regulations that afford employers fair warning of what is required of them under the Act. *In re Metro-East Manufacturing Co.,* 655 F.2d 805, 810–11 (7th Cir.1981). This includes the "responsibility to state with ascertainable certainty what is meant by the standards [the Secretary] has promulgated." *Diamond Roofing Co. v. OSHRC,* 528 F.2d 645, 649 (5th Cir.1976). "If a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express." *Id; see also Marshall v. Anaconda Co.,* 596 F.2d 370, 376 (9th Cir.1979).

This case presents a classic example of the Secretary pursuing what he may have intended but did not adequately express. The excavation and trenching regulations are set out in the Code of Federal Regulations under the following headings:

**Subpart P—Excavations, Trenching, and Shoring**

§ 1926.650  General protection requirements.

§ 1926.651  Specific excavation requirements.

§ 1926.652  Specific trenching requirements.

§ 1926.653  Definitions applicable to this subpart.

29 C.F.R. §§ 1926.650–653 (1986). The requirements for excavations and trenching are clearly set out as mutually exclusive. That is the only possible interpretation since the Secretary has separated the excavation requirements from the general requirements, and then has placed the term "specific" prior to both "excavation" and "trenching."

Nonetheless, the Secretary and the Commission claim support for their interpretation because a trench is defined as a "narrow excavation." *See* 29 C.F.R. § 1926.653(n). I fail to see how an employer is expected to glean reasonable notice from this definition that the *specific* trenching requirements are merely a subcategory of the *specific* excavation requirements. The definition of an excavation does not even support this position. 29 C.F.R. § 1926.653(f) provides that, under certain circumstances, "an excavation *may become a trench.*" (Emphasis added).

In spite of the way the regulation is written, the Secretary and the Commission argue that their interpretation should be deemed reasonable because otherwise many protective features in the excavation requirements would not apply to trenches. It would seem, however, that if they want to achieve that reasonable result, they should change the regulations so that the regulations can be reasonably interpreted. Common sense may cause a trench digger to initiate some of the protections required for excavations, but these regulations do not adequately instruct him to do so.

The government has submitted a number of documents with its briefs which underscore the distinction between excavations and trenches. For example, two recent OSHA news releases discuss safety for

"trenching and excavation." A trenching and excavation checklist recites safety precautions before, during and after trenching or excavation. A Department of Labor publication entitled *Employer-Employee Safe Practices for Excavations & Trenching Operations* contains numerous references to "trenches and/or excavations." Construction safety standards from the Department of Interior clearly distinguish "open excavations" and "trench excavations." The Corps of Engineers' general safety requirements clearly label rules for general excavations and additional rules for trench and shaft excavations. Presumably these documents are supposed to substantiate the government's contention that all trenches are excavations and are thus subject to the excavation requirements. Instead, these documents emphasize that excavations and trenches are not one and the same. These documents would further lead the employer to conclude that the "specific" requirements for excavations and trenches are different.

At oral argument, the government informed us that the regulations are being "reviewed" in anticipation of their being amended. Part of that review should include a closer look at some of the exhibits the government submitted as a supplement to its brief. The general safety requirements of the Corps of Engineers (submitted with the government's brief), under the overall heading of "Excavations," has subheadings entitled "General," "Trench Excavation," and "Excavation of Small Diameter Shafts." This seems to be a better way to notify employers of the general requirements which apply to all excavations and the additional requirements that apply to specific types of excavations. Because the Secretary has not drafted regulations that give an employer fair warning of what is required of him, I would reverse the order of the Commission.