# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 18, 2010         Decided April 19, 2011

No. 09-1278

AVIA DYNAMICS, INC.,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

———

On Petition for Review of an Order
of the Federal Aviation Administration

———

*Jason A. Dickstein* argued the cause for the petitioner.

*Edward Himmelfarb*, Attorney, United States Department of Justice, argued the cause for the respondent. *Anthony J. Steinmeyer*, Attorney, United States Department of Justice, was on brief.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Petitioner Avia Dynamics, Inc. (Avia), a manufacturer and distributer of

aircraft parts, seeks review of an "Unapproved Parts Notification" (UPN) posted by the Federal Aviation Administration (FAA) on its website.[1] The UPN declared that Avia Dynamics had manufactured certain aircraft parts without FAA production approval. Because Avia filed its petition after the sixty-day statutory time limit had elapsed and has failed to demonstrate "reasonable grounds" for missing the deadline, we deny its petition as untimely.

## I.

The FAA has statutory responsibility to enforce minimum safety standards in civil aviation. 49 U.S.C. § 44701(a)(1). As part of its statutory mandate, the FAA shall issue a "type certificate" for any "aircraft, aircraft engine, or propeller, or . . . appliance" that meets its standards. 49 U.S.C. § 44704(a)(1). Replacement parts and parts used to modify a "type certificated" aircraft must be manufactured according to FAA specifications, except under certain limited circumstances. 14 C.F.R. § 21.303(a)–(b). In general, a parts manufacturer must obtain a "Parts Manufacturer Approval" from the FAA by providing evidence that its "design of the part" meets FAA airworthiness requirements and by certifying that it has a "fabrication inspection system" in place to ensure continued compliance with FAA requirements. *See generally id.* § 21.303.

In 1993, the FAA created the "Suspected Unapproved Parts" (SUP) Program to prevent aircraft parts manufactured without a Parts Manufacturer Approval—known as "unapproved parts"—from being installed on type certificated aircraft. FAA Advisory Circular 21-29C, Detecting and Reporting Suspected

---

[1]The FAA is an administration within the United States Department of Transportation. 49 U.S.C. § 106(a).

Unapproved Parts, ¶¶ 3(b)(1), 3(o), 5(a)–(b) (July 22, 2008). Through the SUP Program, the FAA identifies a suspected unapproved part in the market, investigates and then takes one of several actions. FAA Order 8120.16, Processing Reports of Suspected Unapproved Parts, ch. 4, ¶ 2 (July 15, 2008) (Order 8120.16). The actions include initiation of a civil enforcement action against the non-compliant party and/or publication of a "Field Notification" on the FAA's website to notify the aviation community of the unapproved part. *Id.* ch. 4, ¶¶ 2(i), 4(e). Avia's petition involves one such unapproved parts investigation.

The FAA opened an SUP investigation on October 23, 2006 after an FAA inspector discovered that a type of aircraft current limiter[2] in Avia's inventory appeared to have been manufactured without FAA approval. The investigation focused at first on Elliptical Systems, Inc., the manufacturer of the current limiter, but it soon shifted to Avia as it became apparent that Elliptical fabricated the parts according to Avia's specifications. The scope of the investigation changed too, branching out from current limiters to include overhead light switches, also manufactured by Elliptical, coffee maker brew trays made by Avia and other aircraft parts not involved herein. On August 6, 2007, after nearly ten months of investigation, the FAA concluded that the current limiters, overhead light switches and coffee maker brew trays in Avia's inventory were all "unapproved parts."

Meanwhile, the FAA took steps to initiate an enforcement action against Avia. On July 24, 2007, it issued a letter of investigation to Avia, informing the company that it was

---

[2] A current limiter is a device that regulates electrical current in order to reduce the risk of short-circuit, loss of power or fire.

investigating "a suspected unapproved parts allegation" and requesting the company's cooperation. Letter from Sandy K. Yamane, Aviation Safety Inspector, Van Nuys Mfg. Inspection Dist. Office, FAA, to Gary Szerman, Avia-Dynamics Corp. (July 24, 2007). The FAA asked Avia to explain the reason for its non-compliance, detail what actions it took to prevent recurrence and identify any relevant mitigating circumstances. After Avia's first response, which the FAA dismissed as "unacceptable,"Avia submitted a comprehensive report on February 27, 2008, entitled "Root Cause Analysis and Corrective Action Report." Letter from Sandy K. Yamane, Aviation Safety Inspector, Van Nuys Mfg. Inspection Dist. Office, FAA, to Gary Szerman, Avia-Dynamics Corp. (Aug. 22, 2007). The FAA signaled its satisfaction with Avia's submission in a letter dated April 7, 2008, informing Avia that "this matter does not warrant legal enforcement action" and that "[i]n lieu of such action and in consideration of your corrective action commitments . . . , we are issuing this letter of correction which will be made a matter of record." Letter from Christopher B. Bergen, Manager, Van Nuys Mfg. Inspection Dist. Office, FAA, to Gary Szerman, Avia-Dynamics Corp. (Apr. 7, 2008).

More than one year later, on May 20, 2009, the FAA official coordinating the SUP investigation of Avia recommended to his superior that the case be closed, adding that "[a]n Unapproved Parts Notification (UPN) has been written for these three (3) parts and forwarded for release." Memorandum from Tony Peplowski, SUP Coordinator, FAA, to Robert Franklin, SUP Focal Point, FAA, SUP Case 2007-00016—Recommendation for Case Closure (May 20, 2009). The UPN announced that "Avia-Dynamics produced and sold replacement coffeemaker brew trays . . . without an FAA production approval" and that Elliptical manufactured current limiters and overhead reading light switches without production

approval and then "sold these parts to Avia-Dynamics Corporation, . . . a distributor of aviation parts." Unapproved Parts Notification, No. 2009-200700016 (June 22, 2009). The UPN urged members of the aviation community to search their aircraft and inventories for any of the unapproved parts "bought from Avia-Dynamics Corporation" and "quarantine[]" the parts "to prevent installation until a conclusive determination can be made about their eligibility for installation." *Id.* Although the UPN was dated June 22, 2009, it was not posted on the FAA website until August 27, 2009. *Id.*

Avia first learned of the UPN on September 7, 2009. On that date, one of Avia's customers called Avia's president, Gary Szerman, to inform him that the FAA had published the UPN on its website. According to Szerman, standard industry practice is to "black-list" any company named in a UPN and Avia attributes a subsequent "significant downturn in [its] sales" to the FAA's action. Szerman Decl.¶¶ 17, 23, *Avia Dynamics*, No. 09-1278 (D.C. Cir. Dec. 10, 2009). Avia sought legal advice on October 26, 2009. On October 27, 2009, Avia petitioned for review of the FAA order but erroneously filed in the District of Columbia Court of Appeals. Avia's petition was forwarded to this court, where it was filed on November 3, 2009.

## II.

We review FAA orders pursuant to 49 U.S.C. § 46110(a), which provides that any "person disclosing a substantial interest in an order" issued by the FAA may petition for review within the statutory deadline set forth therein.[3] Although we have

---

[3]Section 46110(a) provides: "The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day." 49 U.S.C. § 46110(a).

characterized section 46110(a) as a jurisdictional statute, *see, e.g.*, *City of Dania Beach v. FAA*, 628 F.3d 581, 584 (D.C. Cir. 2010); *Adams v. FAA*, 550 F.3d 1174, 1176 (D.C. Cir. 2008), *cert. denied*, 130 S. Ct. 103 (2009); *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 601–02 (D.C. Cir. 2007), we have never held that the *limitations portion* of section 46110(a)—set forth in the second and third sentences—is jurisdictional. Bearing in mind that "[f]iling deadlines, statutory or not, are generally nonjurisdictional," *Menominee Indian Tribe v. United States*, 614 F.3d 519, 523 (D.C. Cir. 2010), we hold that the sixty-day deadline here does not constitute a jurisdictional bar. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 502 (2006) (if the Congress does not "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional, . . . . courts should treat the restriction as nonjurisdictional in character"). We assume without deciding that the UPN at issue constitutes a reviewable "order" both because the FAA concedes as much and because it is unnecessary to decide the question in light of our disposition.

## A.

Avia contends that the sixty-day filing period under section 46110(a) did not begin to run until it received actual notice of the UPN on September 7, 2009. We begin our analysis with the statutory text, bearing in mind that "where filing deadlines are concerned, 'a literal reading of Congress' words is generally the only proper reading of those words.' " *Spannaus v. FEC*, 990 F.2d 643, 644 (D.C. Cir. 1993) (quoting *United States v. Locke*, 471 U.S. 84, 93 (1985)). Section 46110(a) requires that a petition be filed within sixty days of the date the order "is issued," which we read to mean that the filing period begins to run on the date the order is officially made public. *See Fla. Manufactured Hous. Ass'n v. Cisneros*, 53 F.3d 1565, 1574 (11th Cir. 1995) ("The verb 'issue' clearly refers to an act of

public announcement . . . ."); Black's Law Dictionary 830 (6th ed. 1990) ("issue" as verb means "[t]o send forth; to emit; to promulgate"); 8 Oxford English Dictionary 137 (2d ed. 1989) ("issue" as verb means "[t]o give or send out authoritatively or officially; to send forth or deal out in a formal or public manner; to publish"). Here, using its usual procedure, the FAA "issued" the UPN by posting the UPN on the FAA's website on a page dedicated to SUP information. *See* Order 8120.16 ch. 4, ¶ 4(e) (July 15, 2008) ("primary method of dissemination" for UPN "will be posting on the SUP website"). Accordingly, August 27, 2009, the date of its online posting, is the UPN's issue date and marks the beginning of the sixty-day statutory filing period.

Avia asserts, however, that the filing period did not begin to run until one of its customers brought the UPN to its attention on September 7, 2009. In support, Avia relies on *Americopters, LLC v. FAA*, 441 F.3d 726 (9th Cir. 2006), and *National Air Transportation Ass'n v. McArtor*, 866 F.2d 483 (D.C. Cir. 1989), for the proposition that inadequate notice of an FAA order tolls the sixty-day deadline for filing a petition for review. *See Americopters*, 441 F.3d at 733 n.5; *McArtor*, 866 F.2d at 485. We note, at the outset, that the passages Avia relies on are dicta: in both cases, the petitions were filed so long after the petitioners received actual notice that they would have been untimely irrespective of the adequacy of the notice. *Americopters*, 441 F.3d at 733; *McArtor*, 866 F.2d at 486. In addition, both of the cases are distinguishable on the facts. In *Americopters*, the "order" in question was an email sent by an FAA inspector to an airport revoking the petitioner's authorization to use the airport's runway—in effect, a private communication about which the petitioner knew nothing. 441 F.3d at 729. Here, by contrast, the FAA made the UPN publicly available on its website—for Avia and any other interested party to see—pursuant to its established procedure. *See* Order 8120.16

ch. 4, ¶ 4(e) (July 15, 2008). In *McArtor*, the FAA published a rule in the Federal Register with inaccurate bold-faced headings and summary paragraphs that left the mistaken impression the rule was inapplicable to the petitioner, only later issuing an advisory circular that clarified the rule's applicability. 866 F.2d at 485–86. Here, on the other hand, the UPN left no ambiguity that it applied to parts either manufactured or distributed by Avia. *See supra* pp. 4–5. We cannot say, therefore, that the FAA failed to draft the UPN "in a manner that reasonably put[] aggrieved parties on notice of the [order's] content." *McArtor*, 866 F.2d at 485. Avia's lack of actual notice of the August 27, 2009 UPN posting on the FAA's website did not delay the start of the sixty-day filing period. *See Heide v. FAA*, 110 F. App'x 724, 725 (8th Cir. 2004) (unpublished) ("The fact that Petitioners were not personally aware of the order until December of 2002 is irrelevant, as it is the date of the order's issuance that is pertinent under § 46110(a)."), *cert. denied*, 544 U.S. 1018 (2005).

Nor is Avia's notice argument aided by its contention that the FAA was required to serve notice of the UPN under 49 U.S.C. § 46105(b), which requires that an "order" issued by the FAA Administrator "shall be served on the parties to the proceeding and the persons affected by the order," or under section 46103, which prescribes the procedure for service on parties and affected persons. Although we assume the UPN qualifies as a reviewable "order" under section 46110(a), *supra* p. 6, we do not consider the UPN an "order" within the meaning of every provision of the Federal Aviation Act, 49 U.S.C. §§ 40101 *et seq.* Section 46110(a) provides the mechanism for "a person disclosing a substantial interest" to challenge an FAA "order." We have broadly construed the word "order" as used in section 46110(a) because of its function in providing for judicial review. Thus, we recently held that "order" in section 46110(a)

"should be read 'expansively' " but limited our construction to "*this provision*"—referring to section 46110(a) only. *City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007) (emphasis added) (quoting *Aviators for Safe & Fairer Regulation, Inc. v. FAA*, 221 F.3d 222, 225 (1st Cir. 2000)); *see also Aviators*, 221 F.3d at 225 ("The term 'order' is read expansively in review statutes generally . . . and this statute specifically."); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir. 1998) ("[T]o be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order . . . ."); *New York v. FAA*, 712 F.2d 806, 808 (2d Cir. 1983) ("For purposes of review under [predecessor provision to section 46110(a)], the term 'order' should receive a liberal construction."). Indeed, we have long recognized a species of FAA action—a so-called "informal adjudication"—that qualifies as a reviewable "order" under section 46110(a). We have not held, however, that an informal adjudication must be formally served as prescribed by sections 46103 and 46105(b). *Cf. McArtor*, 866 F.2d at 486 (FAA advisory circular started sixty-day filing period where petitioner "normally receives such circulars from the FAA" and publication in Federal Register "alerted aircraft operators generally"); *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598–600, 604 (D.C. Cir. 2007) (FAA advisory circular is reviewable "order" under section 46110(a) but also "fall[s] into the vast category of 'informal adjudications' in which agencies routinely engage" and thus is not subject to APA requirements of notice and comment and record proceeding); *Clark Cty. v. FAA*, 522 F.3d 437, 440–41 (D.C. Cir. 2008) (FAA "Does Not Exceed" determination is reviewable "order" under section 46110(a) but also "informal adjudication" not subject to APA requirement of record hearing); *Hudson v. FAA*, 192 F.3d 1031, 1032, 1035–36 (D.C. Cir. 1999) (FAA issuance of "type certificate" allowing production of Boeing 777-300 is "merely an administrative action, a so-called informal adjudication" not

subject to APA notice and comment requirements). We conclude that a UPN, as an informal order that is advisory in nature, is not subject to the procedural requirements laid out in 49 U.S.C. § 46103 and 49 U.S.C. § 46105(b).

Accordingly, we conclude that the sixty-day clock began to tick on August 27, 2009, the date the FAA posted the UPN on its website. Because Avia filed its petition for review in this court sixty-eight days later, on November 3, 2009, its petition is untimely.

**B.**

Finally, Avia argues that it had "reasonable grounds" for its untimely filing. The FAA contends that Avia has waived the issue.[4] Ordinarily, we do not consider an argument raised for the first time in a reply brief so that the appellee is ensured an opportunity to respond. *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010). Here, however, the FAA was on notice of Avia's "reasonable grounds" argument based on Avia's previous motions; indeed, the FAA thoroughly responded to the argument in its brief to this court. Resp't's Br. 26–30. In any event, even if Avia has not waived the argument, it is unavailing because we have heretofore found "reasonable grounds" only in cases in which the petitioner attributes the delay to more than simply ignorance of the order. *See Safe Extensions*, 509 F.3d at 602–04 (finding "reasonable grounds" where FAA made statements that "could have confused petitioner and others" about whether order

---

[4]The words "reasonable grounds" do not appear anywhere in Avia's opening brief but, in its reply brief, Avia states that the argument articulated in its opening brief—about the FAA's alleged failure to provide notice or service of the UPN—in fact argues the "reasonable grounds" exception. Reply Br. 5 (citing Pet'r's Br. 38–42).

would be revised); *Paralyzed Veterans of Am. v. CAB*, 752 F.2d 694, 705 n.82 (D.C. Cir. 1985) (finding "reasonable grounds" where petitioners were "[a]ware that the rule might be undergoing modification, and unable to predict how extensive any modification would be" and therefore "elected to wait until the regulation was in final form before seeking review"), *rev'd on other grounds sub nom. U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986). Even if ignorance could establish "reasonable grounds," it would not excuse Avia's continued inaction during the forty-nine days from September 7, 2009, the date of Avia's actual notice, until the filing period closed on October 26, 2009. Finally, Avia's contention that the lack of formal notice constitutes "reasonable grounds" for untimely filing gains no more traction here than it did under our precedent discussed earlier. *See supra* pp. 8–10.

For the foregoing reasons, the petition for review is denied.

*So ordered.*