# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued September 19, 2014        Decided April 28, 2015

No. 13-1110

MEHMET EGE,
PETITIONER

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
AND TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENTS

---

On Petition for Review of an Order of the
Transportation Security Administration

---

*Charles A. Zdebski* argued the cause and filed the briefs for the petitioner.

*Sharon Swingle*, Attorney, United States Department of Justice, argued the cause for the respondents. *Stuart F. Delery*, Assistant Attorney General, *Ronald C. Machen*, *Jr*., United States Attorney, and *Mark B. Stern*, Attorney, were with her on brief. *Catherine H. Dorsey*, Attorney, United States Department of Justice, entered an appearance.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Opinion concurring in the judgment filed by *Circuit Judge* KAVANAUGH.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Mehmet Ege, a pilot for Emirates Airlines, petitions for review of an order of the Transportation Security Administration (TSA) that prohibits him from flying to, from or over the United States. Ege believes the TSA's prohibition is based on his alleged inclusion on the "No-Fly List," a subset of the Terrorist Screening Database (TSDB) used by the TSA to "deny boarding of individuals on commercial aircraft operated by U.S. carriers or flying to, from, or over the United States." Resp't's Br. 7.[1] He seeks removal from the No-Fly List or, at a minimum, a "meaningful opportunity to be heard." Pet'r's Br. 23.

The problem, however, is that neither the TSA nor the Department of Homeland Security (DHS)—the only two respondent agencies—has "authority to decide whose name goes on the No-Fly List." *Ibrahim v. DHS*, 538 F.3d 1250, 1254 n.6 (9th Cir. 2008). Instead, the Terrorist Screening Center (TSC), which is administered by the Federal Bureau of Investigation (FBI), *see About the Terrorist Screening Center*, FBI, http://www.fbi.gov/about-us/nsb/tsc/about-the-terrorist-screening-center (last visited Apr. 26, 2015), is "the sole entity with both the classified intelligence information" Ege

---

[1] "As a matter of policy, the federal government does not confirm or deny whether any particular individual is included in the TSDB or on any of its subset lists," including the No-Fly List. Resp't's Br. 8. Nothing herein should be construed as indicating whether Ege is, in fact, on any list or in any database maintained by the Government.

wants and "the authority to remove" names from the No-Fly List/TSDB. *Latif v. Holder*, 686 F.3d 1122, 1129 (9th Cir. 2012). And because we have no jurisdiction under 49 U.S.C. § 46110 to issue an order binding the TSC, we *ipso facto* cannot redress Ege's injury even if we were inclined to agree with him. For this reason, we must dismiss his petition for lack of standing.

After experiencing unspecified travel issues in 2009,[2] Ege submitted an online inquiry to the DHS's Traveler Redress Inquiry Program (DHS TRIP), the administrative review mechanism that allows an individual to seek assistance if he believes he has "been improperly or unfairly delayed or prohibited from boarding an aircraft." 49 C.F.R. § 1560.205(a).[3] Ege's DHS TRIP inquiry was reviewed by

---

[2] Although Ege refers to his 2006 removal from the Master Crew List, a manifest that must be submitted to the TSA by every foreign air carrier operating flights over the United States and that contains identifying information for "all crew members . . . operating and servicing" such flights, 19 C.F.R. § 122.49c(a), he never petitioned for review of the administrative denial of that removal, which denial occurred in 2008. We therefore limit our review to the unspecified travel difficulty Ege experienced in 2009 that led him to seek redress through DHS TRIP and that culminated in the 2013 TSA order, which he petitions that this Court review. We note, however, that Ege believes his removal from the Master Crew List also resulted from his alleged inclusion in the TSDB. *See* Pet'r's Br. 9 ("The Master Crew List operates similar to the Do-Not Fly list. The TSA makes its determination of whether a pilot should stay on the master crew list by cross-checking the information with" the TSC). For that reason, our analysis would not change had he challenged his Master Crew List removal in his petition for review.

[3] As our concurring colleague observes, *see* Concur. Op. 2, DHS TRIP was created in response to a congressional directive that it

the TSA, which responded by letter on March 24, 2011, informing him that his record had been reviewed and that any appropriate changes or corrections had been made. Apparently, Ege's travel woes persisted and he subsequently contacted the TSA to complain. On February 6, 2012, the TSA sent Ege another letter, stating that it had "conducted a review of any applicable records in consultation with other federal agencies, as appropriate" and "determined that no changes or corrections [were] warranted at th[at] time." Resp't's Br. 15. The TSA's February 6 letter also informed Ege that he could administratively appeal its initial determination.

Ege did so on February 25, 2012, submitting a letter that expressed his belief that he had been placed on the No-Fly List and that his alleged inclusion was hampering his employment as an international pilot. On January 22, 2013, the TSA issued its final order, which upheld the initial agency decision and told Ege that he could seek review "by a United States Court of Appeals under 49 U.S.C. § 46110."

"establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat." 49 U.S.C. § 44926(a). But it is axiomatic that the DHS's *attempt* to comply with the Congress's mandate in a manner consistent with the "constitutional elements of jurisdiction," which jurisdiction is the "essential ingredient of separation and equilibration of powers," does not affect our independent obligation to determine whether a redressable case or controversy exists. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). And based on the interplay among the DHS, the TSA and the TSC in the context of No-Fly List/TSDB challenges, a petitioner cannot, consistent with constitutional standing principles, raise a No-Fly List/TSDB challenge through review pursuant to section 46110, notwithstanding his compliance with the DHS TRIP process.

Pet'r's Br. Ex. A. On April 4, 2013,[4] Ege petitioned this Court for review under section 46110, which provides this Court with jurisdiction to review orders issued by the DHS, the TSA and the Federal Aviation Administration (FAA). 49 U.S.C. § 46110(a).

Uncertain about our power to adjudicate Ege's petition, we asked the parties to submit supplemental briefs addressing whether this Court has jurisdiction under 49 U.S.C. § 46110 to hear Ege's challenge to his alleged inclusion in the TSDB and on the No-Fly List. The parties complied, both assuring us that Ege's injury is redressable on section 46110 review. Despite their agreement, "[w]hen there is doubt about a party's constitutional standing," we must "resolve the doubt, *sua sponte* if need be." *Lee's Summit, Mo. v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000); *see also Steel Co.*, 523 U.S. at 95 (" '[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . ' even though the parties are prepared to concede it." (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) (quotation mark omitted))). Based on our independent assessment, we conclude that we do not have the requisite Article III jurisdiction to allow Ege's case to proceed.

---

[4] Our concurring colleague correctly observes that Ege filed his petition for review after expiration of the 60-day time limit prescribed by 49 U.S.C. § 46110(a). *See* Concur. Op. 2. Because we lack Article III jurisdiction, our "only function . . . is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Accordingly, we take no position on whether Ege demonstrated "reasonable grounds" to excuse his untimely filing. 49 U.S.C. § 46110; *see also Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 519 (D.C. Cir. 2011) (section 46110 filing deadline not jurisdictional).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, Ege must have suffered an "injury in fact." *Id.* Second, his injury must be "fairly traceable to the challenged action[s] of the [TSA or DHS], and not the result of the independent action of some third party not before the court." *Id.* (alterations omitted). And third, "it must be likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision." *Id.* at 561 (quotation marks omitted).

The jurisdictional deficiency dooming Ege's petition lies in his failure to satisfy the second and third standing elements, as articulated in *Lujan*. *See* 504 U.S. at 560–61. His failure is due, in turn, to the relief he seeks. True, Ege would like to "board . . . a plane" and to fly "to, from, or over the United States." Concur. Op. 1. But Ege makes plain, and the TSA agrees, that his injury is his alleged inclusion on the No-Fly List and in the TSDB and the precise relief he seeks is either removal from them or an opportunity to more effectively argue for removal. *See* Pet'r's Reply Br. 9 (arguing that DHS and TSA erred "when they included Mr. Ege on Terrorist Screening Database" and "No-Fly List"); *see also* Resp't's Br. 8 (Ege "appears to argue that he has been wrongfully placed in the TSDB and on the No-Fly List").[5]

Section 46110 gives us authority to review orders from the TSA, DHS and FAA. 49 U.S.C. § 46110. "[T]he sole entity with . . . the authority to remove" names from the No-

---

[5]  Indeed, even after we requested the parties to submit supplemental briefing regarding this Court's jurisdiction under section 46110, Ege made no attempt to recast the No-Fly List/TSDB relief he seeks. *See* Pet'r's Supp. Br. 1; *see also* Resp't's Supp. Br. 2.

Fly List/TSDB, however, is the TSC. *See Latif*, 686 F.3d at 1129. Because the " 'case or controversy' limitation" of Article III requires that we "act only to redress injury that fairly can be traced to the challenged action of the" agencies before us (*i.e.*, DHS and TSA), "and not injury that results from the independent action of some third party not before the court" (*i.e.*, the TSC), *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976), we have no power to redress Ege's No-Fly List/TSDB-related injury. *See also Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991) ("[T]his Court has denied standing where the plaintiff seeks to change the defendant's behavior only as a means to alter the conduct of a third party, not before the court, who is the direct source of the plaintiff's injury." (quotation marks and emphasis omitted)). *See generally Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014) ("To invoke the jurisdiction of the federal courts, . . . a proper defendant [must] be sued.").

The Ninth Circuit is in accord.[6] It has observed that the "TSA is merely a conduit for a traveler's challenge to inclusion on the" No-Fly List and in the TSDB, "simply pass[ing] grievances along to TSC and inform[ing] travelers

---

[6] The Ninth Circuit characterized the difficulty inherent in mounting a No-Fly List/TSDB challenge under section 46110 as one of subject-matter jurisdiction rather than Article III standing because the TSC was named as a defendant/respondent in each case in which the issue arose. *See Ibrahim*, 538 F.3d at 1253; *Latif*, 686 F.3d at 1127; *Arjmand v. DHS*, 745 F.3d 1300, 1302 (9th Cir. 2014). Because the TSC was before the court in those cases, the question was whether the court had "original jurisdiction" under section 46110 to enjoin it. *Arjmand*, 745 F.3d at 1302. Ege, however, did not name the TSC as a respondent and, accordingly, the jurisdictional deficiency in his petition is better understood as no Article III standing because the sole entity with the authority to redress his injury is missing.

when TSC has made a final determination." *Latif*, 686 F.3d at 1128. Because "TSC—not TSA—actually reviews the classified intelligence information about travelers and decides whether to remove them from the List" and "established the policies governing that stage of the redress process," *id.*, we agree that we cannot, on section 46110 review, provide relief to an individual included on the No-Fly List or in the TSDB by "simply amending, modifying, or setting aside *TSA's orders* or by directing *TSA* to conduct further proceedings." *Id.* at 1129 (emphases in original); *see also Arjmand*, 745 F.3d at 1302 ("[S]ince § 46110 does not grant circuit courts jurisdiction to review TSC orders, the statute cannot grant jurisdiction over claims seeking removal from the TSDB.").

Both Ege and the TSA argue that the Ninth Circuit got it wrong but we are not persuaded. They insist that Ege's challenge to his alleged No-Fly List/TSDB status is "inescapably intertwined" with the TSA order of which he seeks review. *Cf. Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) ("statutes such as Section 46110(c)" include "claims that are 'inescapably intertwined' with review of such orders"). Although courts use the "inescapably intertwined" doctrine to review a *claim* not expressly included in a jurisdictional grant, we are aware of no case—and neither party cites one—in which a court has used the "inescapably intertwined" doctrine to enjoin a *party* not so included. This is unsurprising; were we able to use the "inescapably intertwined" doctrine to redress injuries caused by absent parties, we would routinely "offend[] fundamental principles of separation of powers." *See Steel Co.*, 523 U.S. at 94.

The TSA suggests we could simply issue an injunction requiring it to allow Ege to board an airplane, leaving unaffected his status regarding the TSDB. Resp't's Supp. Br. 9. Our concurring colleague agrees. *See* Concur. Op. 1–

2.  But the TSA's proposal falls short for at least two reasons. First, as a threshold matter, merely "boarding" a plane is not the relief Ege seeks—rather, he wants off the No-Fly List and removed from the TSDB. *See supra* p. 6 & n.5. Second, as a practical matter, the TSA's proposal would do Ege no good. Ege *can* board and pilot an airplane and, as a commercial pilot for Emirates Airlines, he *has* boarded and piloted airplanes as recently as October 2013. *See* Pet'r's Br. Ex. H (Ege's flight logs). The problem is that Ege cannot board or pilot flights *destined for the United States*. If his alleged TSDB status remains unchanged, it is possible that one of "several" other federal agencies could use the TSDB to prevent Ege from crossing the U.S. border. *See* Resp't's Br. 7. For example, the Department of State—an entity, like the FBI and the TSC, that is not included in section 46110's grant of jurisdiction—uses the TSDB to screen individuals who "apply for . . . visa[s]." OFFICE OF THE INSPECTOR GENERAL, FOLLOW-UP AUDIT OF THE TERRORIST SCREENING CENTER (2007), *available at* http://www.justice.gov/oig/reports/FBI/a0741/intro.htm; *see also Ibrahim*, 669 F.3d at 989 (State Department "uses a subset of the TSDB to screen visa applicants").

Because Ege's alleged TSDB status would prevent him from flying "to, from, or *over the United States*" even if the TSA allowed him "to board or pilot a plane," Concur. Op. 1, 2 (emphasis added), it is "merely speculative" at best that the TSA's proposal would remedy Ege's purported injury. *Lujan*, 504 U.S. at 561 (quotation marks omitted). We plainly need more than the TSA's assurance—first given at oral argument—that the entire Executive Branch would allow Ege to board or pilot a plane and cross into the United States before we can conclude that Ege's alleged injury is redressable. *Cf. Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (generally, "a court's judgment binds only the parties

to a suit"). Instead, Ege would need to add the TSC as a respondent—something he cannot do under section 46110.

Relying on section 46110 as the jurisdictional basis of our review, Ege seeks removal of his alleged inclusion on the No-Fly List and in the TSDB. The agencies whose actions are reviewable under section 46110, however, have no "authority to decide whose name goes on the No-Fly List." *Ibrahim*, 538 F.3d at 1254 n.6; *see also Arjmand*, 745 F.3d at 1303. Because we cannot redress Ege's injury, we dismiss his petition for lack of standing.

*So ordered.*

KAVANAUGH, *Circuit Judge*, concurring in the judgment: Mehmet Ege is a pilot who flies for Emirates Airline, which is headquartered in Dubai. Ege is a dual citizen of Canada and Turkey. The Transportation Security Administration, commonly known as TSA, has barred Ege from piloting a plane to, from, or over the United States. Ege also claims that TSA has barred him from even *boarding* a plane to, from, or over the United States.

Ege asks this Court to review TSA's January 22, 2013, final order that allegedly bars him from boarding a plane to, from, or over the United States. Ege also complains about TSA's 2008 final order barring him from piloting a plane to, from, or over the United States.

To begin with, both Ege and the Government agree that Ege has standing to bring this suit against TSA. I likewise agree. The majority opinion nonetheless has sua sponte denied standing to Ege. According to the majority opinion, Ege's complaint is not redressable by the Court because TSA could not comply with a court order that directed the agency to allow Ege to board or pilot a plane. I frankly do not understand that.

Under federal law, TSA controls access to planes. TSA barred Ege from piloting planes and allegedly barred Ege from boarding planes. Congress has mandated that TSA "shall establish a timely and fair process for individuals" who are delayed or prohibited from boarding planes to "appeal to the Transportation Security Administration the determination and correct any erroneous information." 49 U.S.C. § 44903(j)(2)(G)(i); *see also* 49 U.S.C. § 44926(a). Ege invoked that appeals process. Following that appeals process, TSA issued an order affirming its decision that allegedly bars Ege from boarding planes. Ege asks us to review that order, and a similar order barring Ege from piloting planes. Under Federal Rule of Appellate Procedure 15(a), Ege properly

named TSA as respondent in his petition for review filed in this Court. And TSA, represented by the Department of Justice, says it could and would, if ordered by a final court decision, allow Ege to board or pilot a plane. *See* Tr. of Oral Arg. at 12:51-13:43. What more do we need? In my view, this case readily meets the injury in fact, causation, and redressability prongs of the standing doctrine. The majority opinion does not cite any case of the Supreme Court or this Court suggesting that the redressability prong of standing is a barrier to suit where an individual follows an agency review process mandated by Congress and then appeals the agency's final order.

That said, the problem for Ege here is that his petition for review is untimely. Under Section 46110(a), a petitioner must file a request for review of a TSA order "not later than 60 days after the order is issued." 49 U.S.C. § 46110(a). This Court may excuse a late filing "only if there are reasonable grounds for not filing by the 60th day." *Id.*

On January 22, 2013, TSA issued the final order that allegedly bars Ege from boarding a plane to, from, or over the United States. But Ege's petition for review of that TSA order was not filed until April 4, 2013. Ege's petition was thus filed 10 days *after* the 60-day period for seeking review had expired. Moreover, TSA's final order barring Ege from piloting a plane to, from, or over the United States was issued in 2008. So Ege is long past the time to challenge that order as well.

Under this Court's precedent, we must dismiss an untimely petition for review under Section 46110(a) unless there are reasonable grounds for delay. *See Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 521 (D.C. Cir. 2011). In this case, the record does not disclose any reasonable grounds for delay.

As to TSA's 2008 order, Ege has offered no explanation for his several-year delay in seeking review. As to TSA's 2013 order, Ege claims that the date he received TSA's order, his geographic location, and his employment excuse his failure to file his petition on time. It is true that Ege is an international pilot living in Dubai, and that he allegedly became aware of TSA's January 22, 2013, order just 12 days before the 60-day period for seeking review of that order expired. But that still gave him 12 days to file a timely petition for review. He did not do so.

I would therefore dismiss Ege's petition as untimely. If Ege seeks to travel on a plane flying to, from, or over the United States, and TSA prevents him from doing so, the Government has stated to the Court that Ege may bring a new challenge at that time. *See* Tr. of Oral Arg. at 19:29-19:51.